Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
E-mail: harrisa@harrisandruble.com
E-mail: pmohan@harrisandruble.com
E-mail: mgal@harrisandruble.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HAYWARD, individually and as proxies of the State of California on behalf of Aggrieved Employees,<br><br>Plaintiff,<br><br>v.<br><br>LUXURY SHUTTLE GROUP, LLC, a California Limited Liability Company, LANEAR MONTGOMERY, an individual, MARRIOTT INTERNATIONAL, INC., a Delaware Corporation, FOUR POINTS SHERATON LAX, an entity of unknown form, SIXT RENT A CAR, LLC, a Delaware Limited Liability Company, and DOE ONE through and including DOE THIRTY,<br><br>Defendants. | Case No: 2:17-CV-07395-RAO<br>*Assigned to Magistrate Judge Rozella A. Oliver*<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS-ACTION SETTLEMENT AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: January 9, 2019<br>Time: 10:00 a.m.<br>Place: Roybal Federal Building<br>255 E. Temple St., Ctrm 590<br>Los Angeles, CA 90012<br><br>First Amended Complaint<br>Filed: November 7, 2018 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2019, at 10:00 a.m., or as soon thereafter as soon as the matter may be heard, in Courtroom 590 of the Royal Federal Building and United States Courthouse, located at 255 E. Temple St., Los Angeles, CA, 90012, Plaintiff Terry Hayward ("Plaintiff") will, and hereby does, move this Court for entry of an order as follows:

1. Granting preliminary approval of the Joint Stipulation of Settlement and Release of Claims ("Settlement Agreement" or "Stipulation") between Plaintiff, Individually and on Behalf of the Class, and Defendants Marriott International, Inc. ("Marriott"), Sixt Rent A Car, LLC ("Sixt"),  Crescent Hotels and Resorts, LLC ("Crescent"), and New Wynn Li LP, d/b/a Four Points By Sheraton ("Four Points") (hereinafter, collectively, the "Settling Defendants");

2. Approving the Class Notice and plan for distribution of the Class Notice;

3. Approving the Claim Form and Request for Exclusion Form;

4. Provisionally certifying the class for settlement purposes only;

5. Provisionally appointing Plaintiff as the Class Representative for settlement purposes only;

6. Provisionally appointing Plaintiff's counsel as Class Counsel for settlement purposes only;

7. Appointing Simpluris, Inc. as the Settlement Administrator; and

8. Scheduling a hearing on final approval of the settlement.

Good cause exists for the granting of this motion as the proposed settlement is fair, adequate, and reasonable.  Plaintiff's Motion for Preliminary Approval of this $95,000 class action settlement should be granted as it will result in an average gross recovery of approximately $805 and an average net payment of approximately $452 to each Class Member.

In order to discharge Plaintiff's responsibilities under Local Rule 7-3, before filing of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, on or before

December 3, 2018, Plaintiff conferred with counsel for Settling Defendants regarding the filing of this motion.

The motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of Alan Harris and Terry Hayward, including the Joint Stipulation, the complete files and records of this case, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

DATED: December 10, 2018                    Respectfully submitted,

HARRIS & RUBLE

_____/s/ *Alan Harris*_____
Alan Harris
*Attorneys for Plaintiff*

# *TABLE OF CONTENTS*

MEMORANDUM OF POINTS & AUTHORITIES ................................................1

I.     Introduction ....................................................................................1

II.    The Initial Complaint and the Execution of the Settlement Agreement ........2

III.   Summary of the Settlement Agreement and Proposed Distribution .............5

IV.    Incentive Awards and Attorney's Fees............................................7

V.     Notice to the Class ........................................................................8

VI.    Release Provisions and Opting Out...............................................10

VII.   The Court Should Conditionally Certify the Class and Should
       Preliminarily Approve the Settlement Agreement .........................11

       A.     Class Certification Is Warranted .......................................11

       B.     The Settlement Meets the Requirements for Preliminary
              Approval....................................................................13

              i.     Settlement Negotiations Were Conducted at Arm's
                     Length .............................................................13

              ii.    The Settlement Has No Obvious Deficiencies .........14

V.     Conclusion ....................................................................................16

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION

# *TABLE OF AUTHORITIES*

Page(s)

<u>Cases</u>

<u>Adames v. Mitsubishi Bank, Ltd.</u>,
  133 F.R.D. 82 (E.D.N.Y. 1989)...........................................................................11
<u>Biggs v. Wilson</u>,
  1 F.3d 1537 (9th Cir. 1993) ................................................................................3
<u>Boeing Co. v. Van Germet</u>,
  444 U.S. 472 (1980).............................................................................................8
<u>Brinker Rest. Corp. v. Superior Court</u>,
  53 Cal. 4th 1004 (2012).....................................................................................14
<u>Campbell v. First Investors Corp.</u>,
  2012 U.S. Dist. LEXIS 155549 (S.D. Cal. filed Oct. 29, 2012) ......................8
<u>Dunleavy v. Nadler</u>,
  213 F.3d 454 (9th Cir. 2000) .......................................................................11, 14
<u>D'Alauro v. GC Servs. Ltd. P'ship</u>,
  168 F.R.D. 451 (E.D.N.Y. 1996)......................................................................11
<u>Elliott v. ITT Corp.</u>,
  150 F.R.D. 569 (N.D. Ill. 1992) .......................................................................12
<u>Futrell v. Payday California, Inc.</u>,
  190 Cal. App. 4th 1419 (2010) ...................................................................4, 5, 6
<u>Hanlon v. Chrysler Corp.</u>,
  150 F.3d 1011 (9th Cir. 1998) ..........................................................................14
<u>In re NASDAQ Market-Makers Antitrust Litig.</u>,
  187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................15
<u>Int'l Union v. Gen. Motors Corp.</u>,
  497 F.3d 615 (6th Cir. 2007) .............................................................................9
<u>Joseph v. Gen. Motors Corp.</u>,
  109 F.R.D. 635 (D.C. Colo. 1986) ...................................................................12
<u>Khanna v. Inter-Con Sec. Sys., Inc.</u>,
  2012 U.S. Dist. LEXIS 137651 at *9 (E.D. Cal. filed Sept. 25, 2012).........11
<u>Linney v. Cellular Alaska P'ship</u>,
  151 F.3d 1234 (9th Cir. 1998) ..........................................................................11
<u>Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.</u>,
  221 F.R.D. 523 (C.D. Cal. 2004).....................................................................15
<u>Negrete v. Allianz Life Ins. Co. of N. Am.</u>,
  287 F.R.D. 590 (C.D. Cal. 2012).....................................................................12
<u>Officers for Justice v. Civil Serv. Comm.</u>,
  688 F.2d 615 (9th Cir. 1982) ...........................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Rannis v. Recchia,
    380 Fed. Appx. 646 (9th Cir. 2010) ............................................................................12
Rodriguez v. West Publ'g Corp.,
    563 F.3d 948 (9th Cir. 2009) .........................................................................7, 15
Rodriguez v. West Publ'g Corp.,
    2007 U.S. Dist. LEXIS 74767 (C.D. Cal. filed Sept. 10, 2007) ...............15, 16
Sibert v. TV Magic, Inc.,
    2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) ...................12
Smith v. CRST Van Expedited, Inc.,
    2013 U.S. Dist. LEXIS 6049 (S.D. Cal. filed Jan. 14, 2013) ..........................7
Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ..........................................................................14
Van Vranken v. Atl. Richfield Co.,
    901 F. Supp. 294 (N.D. Cal. 1995) .................................................................7
Vasquez v. Coast Valley Roofing, Inc.,
    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................7
Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011) .................................................................................12
Yokoyama v. Midland Nat'l Life Ins. Co.,
    594 F.3d 1087 (9th Cir. 2010) .......................................................................13
Young v. Polo Retail, Inc.,
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................................13

Statutes

29 U.S.C. § 201 ...................................................................................................3
29 U.S.C. § 206(a) ..............................................................................................3
29 U.S.C. § 207(a) ..............................................................................................3
29 U.S.C. § 216(b) ..............................................................................................3
Cal. Lab. Code § 201 ....................................................................................3, 10
Cal. Lab. Code § 203 ................................................................................2, 3, 10
Cal. Lab. Code § 226 ................................................................................2, 4, 10
Cal. Lab. Code § 2699 .........................................................................................4
Cal. Lab. Code § 2698 ...................................................................................3, 10
Cal. Lab. Code §§ 510 and 1194........................................................2, 3, 10

Rules

Fed. R. Civ. P. 23 ......................................................................................*passim*

<u>Other Authorities</u>

4 Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u> § 11:50 ..........................15
4 Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u> § 11:41 ..........................16
Schwarzer, *et al.*, <u>Cal. Practice Guide:  Federal Civil Procedure Before Trial</u> ¶ 10:8 ........9

## *MEMORANDUM OF POINTS & AUTHORITIES*

### *I.    Introduction*

Plaintiff Terry Hayward on one hand and Defendants Marriott International, Inc. ("Marriott"), Sixt Rent A Car, LLC ("Sixt"),  Crescent Hotels and Resorts, LLC ("Crescent"), and New Wynn Li LP, d/b/a Four Points By Sheraton ("Four Points") (hereinafter, collectively, the "Settling Defendants") on the other hand, have reached a settlement of the class and collective-action claims alleged in the above-captioned action.[1]  Plaintiff hereby asks the Court to preliminarily approve the settlement and conditionally certify the Class.  The Settlement Agreement calls for Settling Defendants to pay $95,000 in the following amounts: Defendant Marriott in the amount of $37,000; Defendants Crescent and Four Points (hereinafter, collectively, "Sheraton") in the amount of $37,000; and Defendant Sixt in the amount of $21,000.  (December 8**,** 2018 Declaration of Alan Harris ("Harris Decl.") Exhibit 1 at p. 7, ¶ I.O.)

Plaintiff worked for Defendant Luxury Shuttle Group, LLC ("LSG") and its owner Lanear Montgomery as a minimum-wage shuttle driver between the Los Angeles International Airport ("LAX") and various hotels and car rental companies, including those owned and/or operated by Settling Defendants.  (Harris Decl. ¶ 3.)  Plaintiff alleges that Settling Defendants were joint and/or client employers of such employees.  In late 2016 and early 2017, LSG began the process of shuttering operations.  During this period (but also prior to this time), Plaintiff and members of the proposed Class were routinely paid late, not properly compensated for overtime and not provided compliant wage statements.  Once LSG ceased operations, no employees received their final paychecks.  LSG and Montgomery are in default in this action.  (Id.)

Plaintiff contends that LSG and Lanear violated various state and federal wage and hour laws and as joint and/or client employers, Settling Defendants are responsible for the following violations:

---

[1] Defendants Luxury Shuttle Group, LLC and Lanear Montomery were properly served but have not appeared in this case and are in default.

1.     Failure to pay timely wages upon termination of employment under Labor Code section 203.

2.     Failure to pay timely wages during employment under Labor Code section 204.

3.     Failure to pay minimum and overtime wages under Labor Code sections 510 and 1194.

4.     Failure to provide compliant wage statements including the information required by Labor Code section 226(a).

(ECF Doc. No. 57.) Moreover, such violations result in Private Attorney General Act ("PAGA") civil penalties and liquidated damages under the Fair Labor Standards Act ("FLSA").

Under the terms of the Settlement Agreement, each class member will recover a gross amount of $805.08 (= $95,000 /118 estimated class members). (Harris Decl. ¶ 7) The proposed Notice will advise all employees of the need to submit a Claim Form to take part in an equal share of the settlement and that all net settlement proceeds will be distributed equally to those to opt in. The gross amount represents just under two weeks' worth of wages to the shuttle drivers. (Id.)

All told, this is an outstanding result, achieved only after thorough investigation and the exchange of discovery and a mediation session with experienced wage-and-hour mediator Michael D. Young and upon the parties' acceptance of a mediator's proposal for settlement. (Harris Decl. ¶ 4.) The proposed resolution of this matter should be approved.

## II.    The Initial Complaint and the Execution of the Settlement Agreement

Plaintiff Hayward commenced this action on October 10, 2017. By way of the operative First Amended Complaint, Plaintiff asserts causes of action for all of the following: Continuing Wages (California Labor Code § 203), Failure to Pay Minimum Wage and Overtime Compensation, (California Labor Code §§ 510 and 1194), Failure to Provide Accurate Itemized Wage Statements (California Labor Code § 226), Failure to

Pay Minimum Wage and Overtime Compensation (Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.), and Civil Penalties (California Labor Code § 2698). Plaintiff brought this case as a class action, a collective action under the FLSA, 29 U.S.C. § 216(b), and a representative action to secure Private Attorneys General Act ("PAGA") civil penalties. (Harris Decl. ¶ 2.)

### A. *Continuing Wages*

Plaintiff's first claim is for "continuing wages" under sections 201 through 203 of the Labor Code. Section 201 states that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). If an employer "willfully fails to pay" former employees within the time limits set by sections 201 or 202, whichever the case may be, then "the wages of the employee[s] shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," up to a maximum of thirty days. Id. § 203(a). Plaintiff alleges that the Class Members and he have not been timely paid their final wages, entitling them to continuing wages under section 203.

### B. *Failure to Pay Minimum and Overtime Wages*

Undue delay in payment is tantamount to no payment at all. Biggs v. Wilson, 1 F.3d 1537, 1533 (9th Cir. 1993). Here, Plaintiff was not timely paid his final wages. 29 U.S.C. § 206(a) ("Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce [the federal minimum wage rate]."; 29 U.S.C. § 207(a) (stating that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed"). These violations give rise to claims for liquidated damages under the FLSA. Id. § 216. Nonpayment of minimum and overtime wages also violates Labor Code section 510 and 1194 and gives rise to liquidated damages under Labor Code section 1194.2.

### C.    Wage Statements

Plaintiff alleges a pay-stub claim under section 226(a) of the Labor Code. Section 226(a) requires employers to provide their employees with "accurate itemized statement[s]" accompanying their paychecks, listing, *inter alia*, "(8) the name and address of the legal entity that is the employer." Cal. Lab. Code § 226(a). If "[a]n employee suffer[s] injury as a result of a knowing and intentional failure by an employer" to provide such information, the employee "is entitled to recover the greater of all actual damages" or a statutory damage award of up to $4,000. Id. § 226(e). The wage statements at issue incorrectly indicate that the payroll company is the employer. The payroll company is not the employer. Futrell v. Payday California, Inc., 190 Cal. App. 4th 1419, 1431 (2010). Plaintiff contends that the alleged failure to list such information on pay stubs entitles employees to the damages set forth in section 226.

### D.    PAGA Civil Penalties

Plaintiff may seek civil penalties "on behalf of himself or herself and other current or former employees" for violations of sections 201, 202, 203, 226, 204, 510, and 1194 of the Labor Code, which penalties are to be split between the aggrieved employees and the California Labor and Workforce Development Agency ("LWDA"). See Cal. Lab. Code § 2699(a), (i). The amount of the civil penalty, if not specifically provided, is "($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Id. § 2699(f)(2).Defendant Marriott owns and/or operates various Marriott-branded hotels near LAX. Defendant Sheraton owns and/or operates the Four Points Sheraton near LAX. Defendant Sixt owns and/or operates rental car business near LAX. Plaintiff and others shuttled guests of Settling Defendants between LAX and different hotels and car rental locations. Plaintiff alleges that Settling Defendants were the joint and/or client employer. Defendants LSG and Montgomery have not appeared in this case and are in default.

LSG was responsible for the day-to-day administration of time-keeping and

payroll.  (Harris Decl. ¶ 4.)  However, since LSG and Montgomery have not appeared in this action and could not be found, none of these records were available to Plaintiff and Settling Defendants.  (Id.)  However, Plaintiff subpoenaed the records of LSG's accountant, Carswell & Oaks, LLC ("Carswell"), which produced wage statements and Class Member information.  (Id.)

After engaging in written discovery with Settling Defendants and serving a subpoena for employment records of Class Members to LSG's accountant, Carswell, the parties participated in mediation.  After mediation with experienced wage-and-hour mediator, Michael D. Young, on June 18, 2018, a mediator's proposal was circulated. After further negotiations, the mediator's proposal was accepted by Plaintiff and Settling Defendants on June 26, 2018.  A memorandum of understanding was first drafted and subsequently a long-form settlement agreement was drafted, executed, and a copy fully executed by Settling Defendants was provided to Plaintiff's counsel on November 26, 2018.  (Harris Decl. ¶ 4.)

Settling Defendants contend that they have complied with all applicable laws. Settling Defendants dispute all material allegations and all claims for damages and other relief made by Plaintiff in the Complaint or otherwise asserted during the course of the litigation of this action.  (Harris Decl. ¶ 5.)  In particular, Settling Defendants dispute that Plaintiff and the putative class members were employed by it, and that putative class members are entitled to penalties.  (Id.)

### III.    Summary of the Settlement Agreement and Proposed Distribution

The Net Settlement Value, defined as "the portion of the Gross Settlement Value remaining after deductions for approved sums for Class Representative Incentive Award, Settlement Administration Costs, the Attorneys' Fees and Costs Awards that have been approved by the Court, and the Payment to the LWDA," will be apportioned in equal amounts to Settlement Class Members who opt in, after dividing the Net Settlement Value by the number of those who have opted in.  (Harris Decl., Ex. 1, Settlement Agreement at p. 7, ¶ I.P.)

1    Under the Settlement, Plaintiff seeks to represent a Class, defined pursuant to the

2    settlement agreement as follows:

3    [A]ll natural persons who were employed by LSG including but not

4    limited to those persons whose names appear in the LSG's accounting

5    paperwork subpoenaed from LSG's accountant, during the Class

6    Period.

7    (Harris Decl., Ex. 1 at p. 5, ¶ I.D.)  The Class will not include any Class Member who

8    timely files a request for exclusion.

9    According to payroll records subpoenaed from LSG's accountant, there are 118

10    Class Members. Pursuant to the Settlement Agreement, Defendants will pay in total,

11    $95,000, a gross recovery of approximately $805 per employee.  (Harris Decl. ¶ 7.)   The

12    $95,000 Gross Settlement Payment constitutes the Gross Settlement Fund.  The Gross

13    Settlement Fund will be used to pay the costs of Claims Administration ($4,000),

14    attorney's fees ($31,350), costs to Class Counsel ($2,000), a Class Representative

15    Incentive Award ($2,500), and payment of 75% of the PAGA penalties to the LWDA

16    ($1,875), all as approved by the Court.  (Harris Decl. ¶ 9.)  The Net average recovery per

17    employee will be approximately $452.  (Id.)

18    All Net Settlement Funds will be distributed to Class Members on an equal, pro

19    rata basis to all Class Members who submit a claim form.  All employees made a similar

20    minimum wage and were not paid their final wages.  (Harris Decl. ¶ 3.)  The lion's share

21    of the damages and penalties derive from Defendants' failure to timely pay final wages

22    and to furnish a wage statement.  (See Harris Decl. ¶ 8.)  Given that more detailed work

23    and pay information is simply not available to either Plaintiff or Settling Defendants,

24    distribution of an equal amount to each Class Member who submits a claim form, is the

25    most fair distribution given the circumstances.  (Harris Decl. ¶ 7.)  Class Members will

26    be receive funds equivalent to approximately a weeks' worth of work.  (Id.)

27    All funds from uncashed checks sent to claimants after the distribution based on

28    the employee's claims will be disbursed to the LWDA.  The sum of any uncashed checks,

unpaid residue or unclaimed or abandoned class member funds, plus interest on that sum at the legal rate of interest from the date of entry of the initial judgment, shall be made payable to the State Bar of California Justice Gap Fund, to be distributed by the Legal Services Trust Fund Program.  (See Harris Decl. Ex. 1 at p. 21, ¶ 43.)

## IV.    Incentive Awards and Attorney's Fees

Under the terms of the Settlement Agreement, Class Counsel will apply for an incentive award to Plaintiff of $2,500 for his efforts in bringing, prosecuting, and settling this case.  As contemplated by the Settlement Agreement, these awards will come "off the top" of the Gross Settlement Fund.

According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  Courts should consider "'the risk to the class representative in commencing suit, both financial and otherwise,'" as well as "'the amount of time and effort spent by the class representative'" and "'the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation.'"  Smith v. CRST Van Expedited, Inc., 2013 U.S. Dist. LEXIS 6049 at *16 (S.D. Cal. filed Jan. 14, 2013) (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors weigh in favor of approving the awards.  Solely as a consequence of the within action, Settling Defendants will pay $95,000 for the benefit of Class Members. Plaintiff has also expended considerable time conferring with Class Counsel, providing factual background and support, and analyzing Defendants' provided data.  Finally, Plaintiff "undertook the financial risk that, in the event of a judgment in favor of Defendant[s] in this action, they could have been personally responsible for any costs awarded in favor of Defendant[s]."  Vasquez v. Coast Valley Roofing, Inc., 266

F.R.D. 482, 491 (E.D. Cal. 2010).  Indeed, incentive awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." Campbell v. First Investors Corp., 2012 U.S. Dist. LEXIS 155549 at *21–22 (S.D. Cal. filed Oct. 29, 2012).

Pursuant to the terms of the Settlement Agreement, Class Counsel intend to apply for an award of attorney's fees in an amount not to exceed $31,350, *i.e.*, 33% of the Gross Settlement Fund, as well as an award of costs, which, with costs, will not exceed $2,000. Principles of equity permit fees and costs to come from the fund as a whole, see, e.g., Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) ("[T]this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.  The common-fund doctrine reflects the traditional practice in courts of equity, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees.  The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.  Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.").

## V.    *Notice to the Class*

The Settlement Agreement calls for the appointment of a Claims Administrator to deliver the Class Notice and Claim Form to the Class.  After obtaining bids from multiple claims administrators, Plaintiff proposes the appointment of Simpluris, an experienced and well-regarded provider.  (Harris Decl. ¶ 9; see http://simpluris.com/--last accessed December 7, 2018).

As noted above, the fees and costs associated with claims administration will be paid from the Gross Settlement Fund.  The parties presently anticipate that such fees and costs, coupled with the costs of Plaintiffs' counsel, will not exceed $6,000.

The Class Notice to be delivered to Class Members includes the information required by Rule 23 of the Federal Rules of Civil Procedure.  Specifically, the Class Notice describes the nature of the action, the definition of the Class, and the class-wide claims; it explains that Class Members may enter an appearance through an attorney and that the Court will exclude those Members requesting exclusion; and it specifies the time requirements and manner of requesting exclusion, as well as the binding effect of a class-wide judgment.  (Fed. R. Civ. Proc. 23(c)(2)(B) (stating that "[t]he notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).").)  Although Rule 23 does not require notices to inform class members of their objection rights, see Int'l Union v. Gen. Motors Corp., 497 F.3d 615, 630 (6th Cir. 2007), the Class Notice herein will explain that Class Members may object.  Furthermore, (i) the Class Notice indicates the time and place of the hearing to consider final approval of the Settlement Agreement, (ii) it displays the address and telephone number of Class Counsel and the procedure for making inquiries, and (iii) it provides information regarding the fees to be paid to Class Counsel and the incentive awards to be paid to the named Plaintiffs.  See William W Schwarzer, et al., California Practice Guide:  Federal Civil Procedure Before Trial ¶ 10:824 (The Rutter Group 2018) (specifying the content of settlement notice).  In addition, the Class Notice explains the procedures for allocating the Settlement Fund to Class Members.

Under the Settlement Agreement, the Claims Administrator will deliver the Class Notice, along with the Claim Form, to Class Members via first-class mail within fourteen calendar days after receiving address information.  Class Members shall have forty-five days from the date of mailing to submit (i) completed Claim Forms, (ii) requests for exclusion, and/or (iii) objections to the Claims Administrator.

1  ## VI.  *Release Provisions and Opting Out*

2          If the Court grants final approval of the Settlement Agreement, then, in exchange

3  for the consideration described above, Class Members will be deemed to have released

4  Defendants from those claims that were or could have been asserted in the operative

5  complaint stemming from the specific facts alleged therein.  The release is as follows:

6          Settlement Class Members who do not timely opt out will release and

7      discharge Settling Defendants, their respective franchisors, insurance

8      carriers, past or present officers, owners, directors, shareholders, employees,

9      agents, principals, heirs, representatives, accountants, auditors, consultants,

10     insurers and reinsurers, and their respective successors and predecessors in

11     interest, subsidiaries, affiliates, parents, franchisees, hotel owners, managed

12     properties, and attorneys thereof, including Crescent Hotels and Resorts,

13     LLC and New Wynn Li LP, and excluding Defaulting Defendants [LSG and

14     Montgomery] in the Action ("Released Parties"), from all claims, demands,

15     rights, liabilities and causes of action that were asserted in the operative

16     complaint in the Action or that could have been asserted based on the factual

17     allegations in the operative complaint in the Action including but not limited

18     to (1) Section 203 of the California Labor Code, Continuing Wages, (2)

19     Section 204 of the California Code, Timely Wages, (3) Sections 201, 510

20     and 1194 of the California Labor Code, Failure to Pay Minimum Wage and

21     Overtime, (4) Section 226(a) of the California Labor Code, Failure to

22     Provide Accurate Wage Statements, (5) California Labor Code Section 2698

23     *et seq.* PAGA Civil Penalties, and (6) Fair Labor Standards Act ("Released

24     Claims), provided, however, that only those Settlement Class Members who

25     opt-in shall be deemed to have released their Fair Labor Standards Act

26     claim.  The release shall run for the duration of the Class Period.

27  (Harris Decl., Ex. 1, at 21–22, ¶ 47.)  If a Class Member opts out pursuant to the

28  procedures outlined in the Class Notice, then he or she will not release any claims that he

or she may have against either Defendant.  In order to extinguish FLSA claims, Class Members are required to opt in to this case.

**VII.   The Court Should Conditionally Certify the Class and Should Preliminarily Approve the Settlement Agreement**

A.      Class Certification Is Warranted

There is authority to the effect that a pre-certification settlement is subject to a somewhat higher level of scrutiny than one negotiated post-certification.  See, e.g., Dunleavy v. Nadler, 213 F.3d 454, 458 (9th Cir. 2000).  However, concerns about the rights of absent Class Members can be dispelled by the Court's review of the Settlement Agreement and by Rule 23's procedural protections.[2]  Officers for Justice v. Civil Serv. Comm., 688 F.2d 615, 624–25 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983).  A trial court has wide discretion in certifying a class for settlement purposes and will be reversed "'only upon a strong showing that [its] decision was a clear abuse of discretion.'"  Dunleavy, 213 F.3d at 461 (quoting Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998)).

Class actions are favored, and Rule 23 is to be given a broad, rather than a restrictive, interpretation in favor of maintaining class actions.  Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989); Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).  Rule 23 contains four certification requirements:  (i) The class must be so numerous "that joinder of all members is impracticable," (ii) there must be "questions of law or fact common to the class," (iii) the claims of the representative plaintiffs must be "typical of the claims of the class," and (iv) the class representatives must show that they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a).

---

[2] Plaintiffs note that their collective-action claim under the FLSA is not necessarily subject to Rule 23.  However, "[b]ecause the standards for certifying an FLSA class and evaluating the fairness of an FLSA settlement are less stringent than those imposed by Rule 23," courts have found "the FLSA requisites satisfied by a showing that Rule 23 requirements have been met."  Khanna v. Inter-Con Sec. Sys., Inc., 2012 U.S. Dist. LEXIS 137651 at *9 (E.D. Cal. filed Sept. 25, 2012).  Accordingly, the following analysis—both with respect to class certification and preliminary approval—is made only under Rule 23.

1    Here, the numerosity requirement is met.  Again, the total number of Class
2  Members is approximately 118.  Given that "courts will typically find the numerosity
3  requirement satisfied when a class includes 40 or more members," Sibert v. TV Magic,
4  Inc., 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. filed Aug. 21, 2012) (citing Rannis v.
5  Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010), and given that common sense
6  indicates that joinder of all Class Members would be "impracticable," the Class is
7  sufficiently numerous to justify certification.

8    Likewise, the commonality requirement is met.  In this regard, a plaintiff is *not*
9  required to show that there is commonality on *every* factual and legal issue; instead, "for
10  purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." Wal-Mart
11  Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011) (brackets in original).  See also
12  Negrete v. Allianz Life Ins. Co. of N. Am., 287 F.R.D. 590, 602 (C.D. Cal. 2012)
13  (explaining that, "[e]ven after Dukes, the commonality inquiry does not require plaintiffs
14  to demonstrate the 'predominance' of common issues over individualized ones, nor the
15  'cohesion' of the class").  With respect to the present matter, there is considerable
16  commonality among Class Members, as Defendants' policy was to calculate overtime
17  rates without reference to piece-rate compensation.  The legality of that policy can be
18  determined on a class-wide basis only once rather than many separate times in individual
19  suits brought by each Class Member.  This issue, in fact, predominates over issues that
20  affect only individual Class Members (for example, the individual overtime amounts
21  owing to each Class Member on account of Defendants' alleged miscomputation).
22  Moreover, even if it should turn out that the Class definition includes individuals who
23  have not been injured or who do not wish to pursue claims, that is not a bar to
24  certification.  See Elliott v. ITT Corp., 150 F.R.D. 569, 575 (N.D. Ill. 1992); cf. Joseph v.
25  Gen. Motors Corp., 109 F.R.D. 635, 639–40 (D.C. Colo. 1986).

26    Plaintiff also meets the typicality requirement, and he is an adequate
27  Representative Plaintiff.  The fact-pattern for Plaintiff is similar, if not identical, to that
28  for other Class Members:  Plaintiff and Class Members earned hourly wages, they

worked overtime, but their pay was not timely remitted to them.  Plaintiff also has no conflict of interest with the Class, as he shares Class Members' likely desire to make a recovery under the Labor Code.  (Harris Decl. ¶ 12; Hayward Decl. ¶ 6.)  Additionally, Plaintiff is committed to pursuing the claims of the Class, and his motivation in pursuing this action has been to seek reimbursement for himself and the Class.  (See generally, Hayward Decl.)

In addition to the above-described four requirements, this case must also meet one of the non-exclusive factors in Rule 23(b).  Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. Proc. 23(b)(3).  As noted with respect to the commonality requirement, the central issue in this case is the legality of Defendants' various wage and hour policies.  The only individual determination, then, is the quantification of damages for each Class Member—and such an individual determination does not defeat class certification.  See Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification," and explaining that "[o]ur court long ago observed that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment'").

### B.    The Settlement Meets the Requirements for Preliminary Approval

If a proposed settlement appears to be the product of "serious, informed, non-collusive negotiations," and if it "has no obvious deficiencies," the court "should direct that notice be given to the class of a formal fairness hearing."  Young v. Polo Retail, Inc., 2006 WL 3050861 at *5 (N.D. Cal. Oct. 25, 2006).  The proposed Settlement Agreement satisfies these requirements.

### i.    Settlement Negotiations Were Conducted at Arm's Length

There is no doubt that the Settlement Agreement was reached through arm's length

bargaining.  The parties participated in private mediation sessions before experienced wage-and-hour mediator Michael D. Young.  As for the payments to be made to Class Members, the net dollar payments represent significant relief, particularly given the problems in proof inherent in demonstrating that Class Members were entitled to any recovery, at all.  E.g., Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012).  In light of these issues, the parties ultimately agreed to a $95,000 settlement.  (See Harris Decl. ¶ 6.)

### ii.    The Settlement Has No Obvious Deficiencies

According to the Ninth Circuit:

"Assessing a settlement proposal requires a district court to balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class-action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."

Dunleavy, 213 F.3d at 458 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)) (ellipses in original).  Certain factors may predominate in different contexts, and one factor may so strongly predominate that it alone provides a sufficient ground for approval.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### a.    The Strength of Plaintiff's Case

Although Plaintiff considers his unpaid/late pay, wage statement and PAGA claims to be strong, no case is certain of recovery.  Moreover, here, the primary employers that handled day-to-day administration of payroll, LSG and Montgomery, have not appeared in the case and it appears that Plaintiff will not be able to recover from them.  (Harris Decl. ¶ 6.)  Such factors weigh in favor of approving the settlement.

### b.    The Likely Duration of Further Litigation

In most cases, "'unless the settlement is clearly inadequate, its acceptance and

approval are preferable to lengthy and expensive litigation with uncertain results.'" Nat'l
Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004)
(quoting 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:50 (4th ed.
202) (hereinafter "Newberg")).  Granting approval of the Settlement Agreement would
create a Gross Settlement Fund that would quickly pay Class Members about a full week
of wages.  Because the putative Class has not yet been certified and because notice has
not been sent out, the likely duration of further litigation might well be several years.
Accordingly, this factor also weighs in favor of approving the settlement.

### c.    The Risk of Maintaining Class-Action Status Through Trial

Given the potential management issues noted above with respect to Plaintiffs'
claims, "there is no guarantee that th[e C]lass would not be decertified before or during
trial." Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74767 at *29 (C.D. Cal.
filed Sept. 10, 2007) (citing In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D.
465, 476 (S.D.N.Y. 1998)), rev'd on other grounds, 563 F.3d 948 (9th Cir. 2009).  See
also Rodriguez, 2007 U.S. Dist. LEXIS 74767 at *29 (stating that, "if 'insurmountable
management problems were to develop at any point, class certification can be revisited at
any time under Fed. R. Civ. P. 23(c)(1)'") (quoting In re NASDAQ Market-Makers
Antitrust Litig., 187 F.R.D. at 476).

### d.    The Settlement Amount Offered

The Gross Settlement Payment is $95,000, which results in a net amount of $452
assuming that every identified individual opts in, and even after contemplated attorney's
fees and costs, as well as claims-administration fees and costs, are deducted.  (Harris
Decl. ¶ 13.)  This represents a more-than-reasonable resolution of this case.

### e.    The Extent of Discovery and Stage of the Proceedings

The extent of discovery also supports approval.  As detailed in the Harris
Declaration, Class Counsel have conducted extensive interviews with Class Members.
(Harris Decl., ¶ 4.)  Class Counsel also subpoenaed the payroll records of LSG's
accountant and shared them with Settling Defendants.  Class Counsel executed the

Settlement Agreement after having had the opportunity to review both the formal

discovery and informal discovery, "'enabl[ing them] . . . to act intelligently'" in deciding

to settle.  <u>Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767 at *30 (quoting Newberg § 11:41).

### f.    *The Experience and Views of Counsel*

As reflected in the Declaration of Alan Harris filed herewith, Class Counsel have

substantial experience in prosecuting class actions, including wage-and-hour actions.

Class Counsel are of the opinion that the Settlement Agreement represents an excellent

bargain for the Class, given the inherent risks, hazards, and expenses of carrying the case

through trial.  (Harris Decl. ¶¶ 4–6, 10, 14–17.)  As the Central District has explained,

this weighs strongly in favor of approval.  <u>See Rodriguez</u>, 2007 U.S. Dist. LEXIS 74767

at *32–33 (explaining that "the trial court is entitled to, and should, rely upon the

judgment of experienced counsel for the parties"; that, "[h]ere, [c]lass [c]ounsel have

considerable experience in litigating . . . class actions[] and other complex litigation"; and

that "[t]his factor weighs in favor of approving the [s]ettlement").

### g.    *The Reaction of Class Members to the Proposed Settlement*

The reaction of Class Members to the Settlement Agreement cannot, of course, be

known until preliminary approval is given, Class Notice is delivered, and responses are

received.

## V.   *Conclusion*

It is respectfully submitted that the $95,000 settlement with Settling Defendants is

fair, reasonable, and adequate.  The Court should: (1) conditionally certify the Settlement

Class, (2) approve the form and method of Notice, (3) approve Alan Harris, Priya Mohan,

and Min Ji Gal of Harris & Ruble as Class Counsel, (4) approve Plaintiffs as the Class

Representatives, (5) approve the proposed Claims Administrator, and (6) approve the

proposed mechanism for receiving notices of election to opt out of the settlement. This Court should grant the Motion.

Dated:  December 10, 2018

HARRIS & RUBLE

_____/s/ *Alan Harris*_____
Alan Harris
*Attorneys for Plaintiff*

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL & CONDITIONAL CERTIFICATION