Alan Harris (SBN 146079)
Priya Mohan (SBN 228984)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
E-mail: harrisa@harrisandruble.com
E-mail: pmohan@harrisandruble.com
E-mail: mgal@harrisandruble.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HAYWARD, individually and as proxies of the State of California on behalf of Aggrieved Employees,<br><br>Plaintiff,<br><br>v.<br><br>LUXURY SHUTTLE GROUP, LLC, a California Limited Liability Company, LANEAR MONTGOMERY, an individual, MARRIOTT INTERNATIONAL, INC., a Delaware Corporation, FOUR POINTS SHERATON LAX, an entity of unknown form, SIXT RENT A CAR, LLC, a Delaware Limited Liability Company, and DOE ONE through and including DOE THIRTY,<br><br>Defendants. | Case No:  2:17-CV-07395-RAO<br>*Assigned to Magistrate Judge Rozella A. Oliver*<br><br>**NOTICE OF MOTION AND MOTION FOR MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF THE SETTLEMENT**<br><br>Date:      April 17, 2019<br>Time:     10:00 a.m.<br>Ctrm:    590<br>Place:     Roybal Federal Building and United States Courthouse, 255 E. Temple Street, 5th Fl Los Angeles, CA 90012<br><br>First Amended Complaint Filed: November 8, 2018 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 17, 2019, at 10:00 a.m., or as soon thereafter as soon as the matter may be heard, in Courtroom 590 of the Roybal Federal Building and United States Courthouse, located at 255 E. Temple St., Los Angeles, CA, 90012, Plaintiff Terry Hayward ("Plaintiff") will, and hereby does, move this Court for entry of an order as follows:

1.   Granting final approval of the Joint Stipulation of Settlement and Release of Claims ("Settlement Agreement" or "Stipulation");

2.   Approving the adequacy of the Class Notice and plan for distribution of the Class Notice;

3.   Approving the adequacy of the Claim Form, opt-out and objection procedure;

4.   Certifying the Class for settlement purposes only;

5.   Certifying the FLSA collective action for settlement purposes only;

6.   Appointing Plaintiff Terry Hayward as the Class Representative for settlement purposes only;

7.   Appointing Plaintiff's counsel Alan Harris, Priya Mohan and Min Ji Gal of Harris & Ruble as Class Counsel for settlement purposes only;

8.   Determining the reasonableness of the request for an Incentive Award for Plaintiff;

9.   Determining the reasonableness of the request for attorneys' fees and reimbursement of costs incurred by Class Counsel.

Good cause exists for the granting of this motion as the proposed settlement is fair, adequate, and reasonable.  As of this date, the Claims Administrator (Simpluris, Inc.) has not received any objections or requests for exclusion to the Settlement.  The motion is based upon this Notice, the attached Memorandum of Points and Authorities, the March 20, 2019 Declaration of Alan Harris, including the Joint Stipulation of Settlement and Release of Claims, Plaintiff's Motion for Attorneys' Fees, Incentive Award and

Reimbursement of Costs [ECF Doc. 65], the complete files and records of this case, and any other evidence or oral argument which may be considered by the Court at the time of the hearing.

In order to discharge Plaintiff's responsibilities under Local Rule 7-3, before filing of Plaintiff's Motion for Final Approval of Class Action Settlement, on or before December 3, 2018, Plaintiff conferred with counsel for Settling Defendants regarding the filing of this motion.

DATED: March 20, 2019                    Respectfully submitted,

                                         HARRIS & RUBLE

                                         _____/s/ *Alan Harris*_____
                                         Alan Harris
                                         *Attorneys for Plaintiff*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT

# TABLE OF CONTENTS

I. Introduction ................................................................................ 1

II. Summary Of Claims And Settlement 3

III. The Settlement Meets The Standard For Final Approval As It Is Fair, Reasonable, And Adequate ................................................ 5

    A. The Terms of the Proposed Settlement ................................. 5

        1. The Settlement Fund Provides Class Members With a Substantial Recovery ................................................... 7

        2. Plaintiff's Incentive Award ......................................... 7

        3. Class Counsel's Fee And Expense Award .................... 9

        4. Notice to the Class ................................................... 11

        5. Release Provisions and Opting Out ........................... 12

    B. The Proposed Settlement Is Fair, Reasonable and Adequate And Warrants Preliminary Approval ................. 13

        1. The Settlement Negotiations Were Conducted at Arm's Length ........................................................... 14

        2. The Strength of Plaintiff's Case ................................ 14

        3. The Likely Duration of Further Litigation ................. 15

        4. The Risk of Maintaining Class-Wide Status Through Trial ....................................................................... 15

        5. The Settlement Amount Offered ............................... 15

        6. The Extent of Discovery and the Stage of the Proceedings ............................................................. 16

        7. The Experience and Views of Counsel ...................... 16

        8. The Reaction of the Class Members to the Proposed Settlement ............................................................... 17

IV. Conclusion ............................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Boeing Co. v. Van Germet,
  444 U.S. 472 (1980)...........................................................................10, 11, 12
Bolton v. U.S. Nursing Corp.,
  2013 U.S. Dist. LEXIS 79928 (N.D. Cal. filed June 6, 2013) ........................13
Campbell v. First Investors Corp.,
  2012 WL 5373423 (S.D. Cal. filed Oct. 29, 2012) .........................................8
Churchill Village, LLC v. Gen. Elec.,
  361 F.3d 566 (9th Cir. 2004) ...........................................................................5
Class Plaintiffs v. City of Seattle,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................5, 6, 7
DIRECTV, Inc.,
  221 F.R.D. 523 (C.D. Cal. 2004)....................................................................15
Franco v. Ruiz Food Prods., Inc.,
  2012 U.S. Dist. LEXIS 169057 (E.D. Cal. filed Nov. 27, 2012) ....................10
Hanlon v. Chrysler Corp.,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................5, 13
Hesse v. Sprint Corp.,
  598 F.3d 581 (9th Cir. 2010) ..........................................................................13
In re Austrian & German Bank Holocaust Litigation,
  80 F.Supp.2d 164 (S.D.N.Y. 2000) ................................................................17
In re Pacific Enter. Sec. Litig.,
  47 F.3d 373 (9th Cir. 1995) .............................................................................5
Jefferson v. H & M Hennes & Mauritz, L.P.,
  2013 U.S. Dist. LEXIS 2875 (C.D. Cal. filed Jan. 7, 2013)...........................10
Laskey v. Int.'l Union,
  638 F.2d 954 (6th Cir. 1981) ..........................................................................17
Linney v. Cellular Alaska P'ship,
  1997 U.S. Dist. LEXIS 24300 (N.D. Cal. filed July 18, 1997) ......................14
Monterrubio v. Best Buy Stores, L.P.,
  291 F.R.D. 443 (E.D. Cal. 2013)....................................................................12
Moshogiannis v. Sec. Consultants Group, Inc.,
  2012 U.S. Dist. LEXIS 16287 (N.D. Cal. filed Feb. 8, 2012)........................12
MRV Commc'ns., Inc. Derivative Litig.,
  2013 U.S. Dist. LEXIS 86295 (C.D. Cal. filed June 6, 2013)........................14
Mullane v. Cent. Hanover Bank & Trust Co.,
  339 U.S. 306 (1950)........................................................................................12

Nigh v. Humphreys Pharmacal, Inc.,
  2013 U.S. Dist. LEXIS 161215 (S.D. Cal. filed Oct. 23, 2013)......................................15
Petition of Hill,
  775 F.2d 1037 (9th Cir. 1985) .....................................................................................11
Rodriguez v. West Publ'g. Corp.,
  563 F.3d 948 (9th Cir. 2009) ..............................................................................7, 8, 16
Rodriguez v. West Publ'g Corp.,
  2007 U.S. Dist. LEXIS 74767 (C.D. Cal. filed Sept. 10, 2007) ................................15, 16
Smith v. CRST Van Expedited, Inc.,
  2013 WL 163293 (S.D. Cal. filed Jan. 14, 2013) ...........................................8, 9, 10
Smith v. Lux Retail N. Am., Inc., No. C 13-01579 WHA,
  2013 WL 2932243 (N.D. Cal. June 13, 2013) ...................................................14
Staton v. Boeing Co.,
  327 F.3d 938 (9th Cir. 2003) .......................................................................................10
Stoetzner v. U.S. Steel Corp.,
  897 F.2d 115 (3d. Cir. 1990) .......................................................................................17
Van Vranken v. Atl. Richfield Co.,
  901 F. Supp. 294 (N.D. Cal. 1995).................................................................................8
Vasquez v. Coast Valley Roofing, Inc.,
  266 F.R.D. 482 (E.D. Cal. 2010) ..................................................................................8
Williams v. Boeing Co.,
  517 F.3d 1120 (9th Cir. 2008) .....................................................................................13

**Statutes**

29 U.S.C. § 201 ...............................................................................................................3
29 U.S.C. § 216(b) ..........................................................................................................3
California Labor Code § 2699(l)(2) ...............................................................................4
California Labor Code § 203 ..........................................................................................3
California Labor Code § 226 ..........................................................................................3
California Labor Code § 2698 ........................................................................................3
California Labor Code § 2810.3 ...............................................................................2, 16
California Labor Code §§ 510 and 1194 ........................................................................3

**Rules**

Federal Rule of Civil Procedure 23 ....................................................................... Passim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-
ACTION SETTLEMENT

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    After extensive investigation, informal and formal discovery, and the guidance of

4    experienced wage and hour mediator Michael D. Young, Esq., Plaintiff Terry Hayward

5    ("Plaintiff") has, subject to final approval by this Court, achieved a class settlement of the

6    case with Defendants Marriott International, Inc. ("Marriott"), Sixt Rent A Car, LLC

7    ("Sixt"),  Crescent Hotels and Resorts, LLC ("Crescent"), and New Wynn Li LP, d/b/a

8    Four Points By Sheraton ("Four Points") erroneously sued as Four Points Sheraton LAX

9    (hereinafter, collectively, the "Settling Defendants").  Settling Defendants will pay a

10   Gross Settlement Value of $95,000 in the following amounts: Defendant Marriott in the

11   amount of $37,000; Defendants Crescent and Four Points (hereinafter, collectively,

12   "Sheraton") in the amount of $37,000; and Defendant Sixt in the amount of $21,000.

13   (Declaration of Alan Harris in Support of Motion for Final Approval ("Harris Decl."),

14   ¶ 6.)

15   The non-reversionary Settlement will provide for a Gross Settlement Value of

16   $95,000 for the twenty-seven employees who have submitted a claim form as of March

17   19, 2019 according to the Settlement Administrator, Simpluris, Inc.  (Declaration of

18   Jeremiah Kincannon ("Simpluris Decl.") ¶ 9.)  Plaintiff expects more valid claim forms

19   will be submitted closer to the April 9, 2019 deadline to submit a claim form, and

20   estimates that approximately forty-five employees will submit a claim form, which

21   results in an estimated gross settlement payment of just over $2,111, for those Class

22   Members (=$95,000/45).  (Harris Decl. ¶ 10.)  Plaintiff will submit a supplemental

23   declaration with the final number of Class Members who will receive settlement funds

24   after the deadline has passed on April 9, 2019 and prior to the Final Approval Hearing on

25   April 17, 2019.  The Gross Settlement Value includes payments made to the Settlement

26   Class, payments to the Labor and Workforce Development Agency ("LWDA") on

27   Plaintiff's PAGA claims, settlement administration costs, awards of attorneys' fees and

28   costs, and a service award to Plaintiff as set forth below.   The settlement is non-

1    reversionary.

2            Plaintiff requests that the Court grant final approval of the Settlement, as, when

3    analyzing the strengths and vulnerabilities of the Class' claims along-side Settling

4    Defendants' potential liability exposure, the proposed non-reversionary settlement is

5    projected to pay each participating class member an estimated gross recovery of

6    $2,111(=$95,000/45), and an estimated net recovery of approximately $1,228

7    (=$55,275/45).

8            As described herein, the Settlement is fair to the class.  The proposed Settlement

9    was reached only after thorough investigation and the exchange of discovery and a

10   mediation session with experienced wage-and-hour mediator Michael D. Young of

11   Judicate West, and upon the parties' acceptance of a mediator's proposal for settlement.

12   The settlement takes into consideration the risk that FLSA and/or class certification may

13   not be maintained as well as Settling Defendants' defenses, which, if successful, might

14   result in Plaintiff and the Class taking nothing for their claims against any of the Settling

15   Defendants.  Settling Defendants contend that they are neither a common law joint

16   employer or a client employer of the employees under California Labor Code § 2810.3.

17           On January 22, 2019, this court preliminarily approved the Settlement [ECF Doc.

18   64] ("Preliminary Approval Order").  Following entry of the Preliminary Approval

19   Order, the parties ensured that each step necessary to effectuate the Settlement

20   Agreement occurred as ordered by the Court.  Pursuant to the Preliminary Approval

21   Order, the parties cooperated to mail the Class Notice and Claim Form in the manner

22   specified by the Settlement.  The response from the Class Members thus far has been

23   positive.  As of March 19, 2019, the claims administrator has received no requests for

24   exclusion and no objections to the Settlement.  (Simpluris Decl. ¶¶ 10–11.)  This

25   positive response is a very clear validation of the reasonableness of the settlement.  Once

26   the period to submit a claim form expires, Plaintiff will submit a supplemental

27   declaration indicating the total amount of claims made, exclusions and objections.

28

## II.    SUMMARY OF CLAIMS AND SETTLEMENT

Plaintiff worked for Defendant Luxury Shuttle Group, LLC ("LSG") and its owner Lanear Montgomery as a minimum-wage shuttle driver between the Los Angeles International Airport ("LAX") and various hotels and car rental companies, including those owned and/or operated by Settling Defendants. (Harris Decl. ¶ 2.) Plaintiff alleges that Settling Defendants were joint and/or client employers of such employees. (Id. ¶ 4.) In late 2016 and early 2017, LSG began the process of shuttering operations. (Id.) During this period (but also prior to this time), Plaintiff and members of the proposed Class were routinely paid late, not properly compensated for overtime and not provided compliant wage statements. Once LSG ceased operations, no employees received their final paychecks. LSG and Montgomery are in default in this action. (Id.)

Plaintiff Hayward commenced this action on October 10, 2017. (Id. ¶ 3.) By way of the operative First Amended Complaint, Plaintiff asserts causes of action for all of the following: Continuing Wages (California Labor Code § 203), Failure to Pay Minimum Wage and Overtime Compensation, (California Labor Code §§ 510 and 1194), Failure to Provide Accurate Itemized Wage Statements (California Labor Code § 226), Failure to Pay Minimum Wage and Overtime Compensation (Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.), and Civil Penalties (California Labor Code § 2698). Plaintiff brought this case as a class action, a collective action under the FLSA, 29 U.S.C. § 216(b), and a representative action to secure Private Attorneys General Act ("PAGA") civil penalties. (Id.)

The parties have engaged in substantial investigation including formal discovery. (Id. ¶ 5.) Plaintiff and his counsel diligently pursued an investigation of the Class Members' claims against Settling Defendants, any and all applicable defenses, and the applicable law. (Id.) The investigation included the exchange of information pursuant to informal and formal discovery and interviews with Plaintiff and over ten other Class Members. (Id.) LSG was responsible for the day-to-day administration of time-keeping and payroll. However, since LSG and Montgomery have not appeared in this action, all

pertinent records are not available to available to Plaintiff and Settling Defendants.  (Id.)
Instead, Plaintiff subpoenaed records from Carswell & Oaks, LLC ("Carswell"), LSG's
accountant and payroll service, and reviewed and analyzed the wage statements
produced.  (Id.)  Plaintiff shared these documents with Settling Defendants prior to
participating in a mediation with experienced wage-and-hour mediator, Michael D.
Young.

Under the terms of the Settlement Agreement executed by the Settling Defendants,
a non-reversionary Gross Settlement Fund of $95,000 will be established.  The Net
Settlement Value of $55,275 that is available for potential distribution to Class Members
is calculated by deducting from the Gross Settlement Value: (i) Class Counsel's
attorney's fees and litigation costs ($31,350) [ECF Doc. 65], (ii) the Incentive Award
($2,500), (iii) the PAGA penalty payment to the LWDA ($1,875), and (iv) the fees and
expenses of the Claims Administrator ($4,000).  (Harris Decl. ¶ 6.)

Individual Settlement Payments to participating Class Members will be determined
by dividing the Net Settlement Value of $55,275 by the number of valid claim forms
submitted.  (Harris Decl. ¶ 8.)  The Class Notice advises all Class Members of their
estimated Individual Settlement Payment.

With an estimated net recovery of over $1,228 (=$55,275/45) per class member,
this is an outstanding result, achieved after mediation with Michael D. Young, followed
by additional negotiations under the guidance of Mr. Young, which resulted in the
acceptance of a mediator's proposal.  (Harris Decl. ¶ 5.)  Because the Settlement satisfies
all the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure,
including that they are fair, reasonable and adequate, Plaintiff respectfully requests that
the Court issue an Order granting final approval of the class action settlement in this
action.

The proposed Settlement has also been served on the California Labor Workforce
Development Agency ("LWDA") on December 19, 2018, pursuant to Cal. Labor Code §
2699(l)(2).  (Harris Decl. ¶ 25.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT

1

2     **III.    THE SETTLEMENT MEETS THE STANDARD FOR FINAL**

3              **APPROVAL AS IT IS FAIR, REASONABLE, AND ADEQUATE**

4              Pre-trial settlement of complex class actions is strongly favored.    See Churchill

5     Village, LLC v. Gen. Elec. Co., 361 F.3d 566, 576 (9th Cir. 2004); In re Pacific Enter.

6     Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).  In determining if a settlement meets Rule

7     23 final-approval standards, the district court must find that the settlement is "fair,

8     reasonable, and adequate."  Fed. Rule Civ. Proc. 23(e)(2).  There is an initial presumption

9     of fairness when a proposed class settlement is negotiated at arm's length and presented

10    for court approval.  See Newberg and Conte, Newberg on Class Actions ("Newberg"), §

11    11:41, p. 90 (4th ed. 2002).

12             This determination to approve or reject a settlement is made in the "sound

13    discretion of the trial court."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

14    1998).  In assessing a settlement, the district court considers a number of factors,

15    including:  "the strength of the plaintiff's case; the risk, expense, complexity, and likely

16    duration of further litigation; the risk of maintaining class action status throughout the

17    trial; the amount offered in settlement; the extent of discovery completed and the stage of

18    the proceedings; the experience and views of counsel; the presence of a governmental

19    participant; and the reaction of the class members to the proposed settlement."  Id.  In

20    addition, a settlement must not have been the product of collusion.  Class Plaintiffs v.

21    City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992).  Here, these factors heavily weigh in

22    favor of the Court's granting final approval of the settlement.

23             **A.    The Terms of the Proposed Settlement**

24             The Net Settlement Value, defined as "the portion of the Gross Settlement Value

25    remaining after deductions for approved sums for Class Representative Incentive Award,

26    Settlement Administration Costs, the Attorneys' Fees and Costs Awards that have been

27    approved by the Court, and the Payment to the LWDA," will be apportioned in equal

28    amounts to Settlement Class Members who opt in, after dividing the Net Settlement

Value by the number of those who have submitted a valid claim form.  (Harris Decl., Ex. 1, at p. 7, ¶ I.P.)

Under the Settlement, Plaintiff seeks to represent a Class, defined pursuant to the settlement agreement as follows:

> [A]ll natural persons who were employed by LSG including but not limited to those persons whose names appear in the LSG's accounting paperwork subpoenaed from LSG's accountant, [from October 10, 2013 to January 22, 2019].

(Harris Decl., Ex. 1 at p. 5, ¶ I.D.)  The Class will not include any Class Member who timely files a request for exclusion.

The $95,000 Gross Settlement Payment constitutes the Gross Settlement Fund. The Gross Settlement Fund will be used to pay the costs of Claims Administration ($4,000),  attorney's fees and costs ($31,350), a Class Representative Incentive Award ($2,500), and payment of 75% of the PAGA penalties to the LWDA ($1,875), all as approved by the Court.  (Harris Decl. ¶ 6.)

Based on a final review by all parties of the payroll records subpoenaed from LSG's accountant, a final list of 104 Class Members was sent to the Settlement Administrator.  (Harris Decl. ¶ 8.)  Thereafter, two more class members were added. (Simpluris Decl. ¶ 12.)  As of March 19, 2019, twenty-seven Class Members have submitted a valid claim form representing a 25.47% claims-made rate.  (Id. ¶ 9.)  Plaintiff expects more claim forms will be submitted closer to the April 9, 2019 deadline to submit a claim form, and estimates that approximately forty-five employees will submit a claim form.  (Harris Decl. ¶ 10.)

Based on Plaintiff's estimate, the Gross Settlement Value of $95,000, will result in a gross recovery of approximately $2,111 per Class Member, and the Net Settlement Value will result in a net recovery of approximately $1,228 per Class Member.  (Harris Decl. ¶ 11.)  Based on an anticipated submission of forty-five claim forms, the estimated Individual Settlement Payment per Class Member will be approximately $1,228.  (Id.)

All Class Members will receive an equal portion of the Net Settlement Funds.  All employees made a similar minimum wage and were not paid their final wages.  (Harris Decl. ¶ 14.)  The lion's share of the damages and penalties derive from Settling Defendants' failure to timely pay final wages and to furnish a wage statement.  (Id.) Given that more detailed work and pay information is simply not available to either Plaintiff or Settling Defendants, distribution of an equal amount to each Class Member who submits a claim form, is the most fair distribution given the circumstances.  (Id.) Class Members will be receive funds equivalent to several weeks' worth of work.  (Id. ¶ 15.)

The sum of any uncashed checks, unpaid residue or unclaimed or abandoned class member funds, plus interest on that sum at the legal rate of interest from the date of entry of the initial judgment, shall be made payable to the State Bar of California Justice Gap Fund, to be distributed by the Legal Services Trust Fund Program.  (See Harris Decl. Ex. 1 at p. 21, ¶ 43.)

## 1.    The Settlement Fund Provides Class Members With a Substantial Recovery

Settlement Class Members will receive an estimated Individual Settlement Payment of more than $1,228, an excellent recovery for each individual.  Every participating Class Member will receive a substantial payment in relation to his or her actual losses given that such funds represent several weeks of work.  The plan of allocation was negotiated in such a way as to fairly distribute the recovery among Class Members in accordance with Plaintiffs' theories of potential damages as well as the relative strengths and weaknesses of the claims, with the qualification that penalties and the like may be substantially discounted when evaluating the proposed distribution of a settlement fund.  Rodriguez v. West Publ'g. Corp., 563 F.3d 948, 964 (9th Cir. 2009). The net distribution represents a recovery of a substantial percent of the Class Members' actual damages.

## 2.    Plaintiff's Incentive Award

Under the terms of the Settlement Agreement, Class Counsel may apply for an

7

incentive award to the Plaintiff not to exceed $2,500 for his efforts in bringing and prosecuting this case.  (Harris Decl., ¶ 17; ECF Doc. 65.)  According to the Ninth Circuit, "[i]ncentive awards are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of [a] class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009) (emphasis removed), vacated on other grounds, 688 F.3d 645, 660 (9th Cir. 2012).  Courts should consider "the risk to the class representative in commencing suit, both financial and otherwise," as well as "the amount of time and effort spent by the class representative" and "the personal benefit (or lack thereof) enjoyed by the class as a result of the litigation."  Smith v. CRST Van Expedited, Inc., 2013 WL 163293, at *6 (S.D. Cal. filed Jan. 14, 2013) (quoting Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, all of the factors support approving the award.  First, as a direct result of this suit, Settlement Class Members who submit a timely claim form will receive substantial payments on account of the alleged damages they suffered due to Settling Defendants' purported failure to ensure timely payment of wages, provide a wage statement and pay for all hours worked.  Second, Plaintiff has expended considerable time conferring with Class Counsel and their investigators, providing documentation, factual background and support, and analyzing payroll records and data provided by Defendants.  Finally, Plaintiff "undertook the financial risk that, in the event of a judgment in favor of [Defendants] in this action, [he] could have been personally responsible for any costs awarded in favor of [Defendant]."  Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Indeed, incentive awards are particularly appropriate in employment class actions, where they help to alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer."  Campbell v. First Investors Corp., 2012 WL 5373423, at *8 (S.D. Cal. filed Oct. 29, 2012).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT

The incentive award contemplated in the Settlement Agreement are *below* the range awarded in similar cases, see Smith, 2013 WL 163293, *6.  Plaintiff has filed a Motion for Attorney's Fees, Reimbursement of Costs and Incentive Award, [ECF No. 65], which further supports Plaintiff's request and is scheduled to be heard concurrently with this Motion on April 17, 2019.  Plaintiff respectfully requests that the requested incentive award be approved.  Plaintiff understands that the approval of the proposed resolution of the class claims is not contingent on his receipt of any Incentive Award and that he may not receive one, at all.  (Declaration of Terry Hayward in Support of Motion for Final Approval, ¶ 6.)

### 3.    Class Counsel's Fee And Expense Award

Pursuant to Ninth Circuit precedent and the Settlement Agreement, Class Counsel has applied for 30.4% of the Gross Settlement Value in fees –$28,920.02 – and seek reimbursement of incurred litigation expenses in the amount of $2,429.98, which together amount to 33% of the Gross Settlement Value.  (Harris Decl., ¶ 6; ECF Doc. 65.) Considering the inherent delay and risks involved in a case of this nature, logic demands that Plaintiff's counsel be provided a reasonable fee.  In uncertain cases of this nature, in the absence of reasonable fees, competent counsel will not be available to represent the workers.  This was a hard fought case resulting in a well-deserved settlement for the Class.  The Court should approve Class Counsel's reasonable request for $28,920.02 in attorney's fees and $2,429.98 in incurred litigation costs, payable from the $95,000 common-fund settlement.  Class Counsel filed its Motion for Attorney Fees on February 22, 2019, [ECF Doc. 65] prior to the end of the Notice Period for Class Members' review.

In addition, the Settlement Agreement calls for the appointment of a Settlement Administrator for purposes of, *inter alia*, notifying the Class of the Settlement, overseeing the claims-submission process, calculating each Class Member's Individual Settlement Payment, and making all the payments under the Settlement Agreement.  As noted above, the Administration Costs associated with this process will be deducted from

the Gross Settlement Value.  The Court has approved the appointment of Simpluris, Inc. to be the Claims Administrator.[1]  The costs associated with the administration of this matter are $4,000.  (Simpluris Decl. ¶ 14.)  This includes all costs incurred to date, as well as the estimated costs involved in completing the settlement distribution.  (Id.)  The modest magnitude of these costs is the result of Class Counsel insisting on a bidding process in order to secure the most economical alternative in selecting a Claims Administrator.  (Harris Decl. ¶ 19.)

Principles of equity permit fees and costs associated with a common-fund settlement to come from the fund itself.  See e.g., Boeing Co. v. Van Germet, 444 U.S. 472, 478 (1980) (explaining that the common-fund doctrine "allows a court to . . . assess[] attorney's fees against the entire fund, thus spreading fees proportionately among those benefited").  This principle extends to the fees and costs of claims administration. See Staton v. Boeing Co., 327 F.3d 938, 975 (9th Cir. 2003) (stating that "[t]he post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class").  Further to these equitable-based holdings, courts approving common-fund settlements routinely permit attorney's fees and costs, and the fees and costs of claims administration, to be deducted from the common fund.  See e.g., Jefferson v. H & M Hennes & Mauritz, L.P., 2013 U.S. Dist. LEXIS 2875, at *7–10 (C.D. Cal. filed Jan. 7, 2013) (in a wage-and-hour settlement, deducting 30% of the common fund for attorney's fees, as well as additional amounts for litigation expenses and claims-administration costs); Franco v. Ruiz Food Prods., Inc., 2012 U.S. Dist. LEXIS 169057, at *36, 68 (E.D. Cal. filed Nov. 27, 2012) (in a wage-and-hour settlement, awarding 33% in attorney's fees, an additional amount for litigation costs, and an additional amount for claims-administration costs, all payable from the common fund).

Here, the $95,000 Settlement Amount is a common fund, and all associated fees and costs may therefore be deducted from the fund.  As explained by the Ninth Circuit, a

---

[1] Detail concerning the history, capabilities and experience of Simpluris, Inc. is found at the company website: https://www.simpluris.com/.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT

common fund exists "when (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." In re Petition of Hill, 775 F.2d 1037, 1041 (9th Cir. 1985). According to the Supreme Court, "the[se] criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [amount]." Boeing Co., 444 U.S. at 479 (1980). The Settlement Amount is a common fund because, under the Settlement Agreement, each participating Class Member is entitled to a sum certain computed by dividing the Net Settlement Value by the number of valid claim forms submitted. Class Counsel and the Settlement Administrator are therefore entitled to have their fees and costs paid from the Gross Settlement Amount. In any event, Class Members have been given an opportunity to object to Class Counsel's request.

### 4. Notice to the Class

In compliance with the Preliminary Approval Order, the Claims Administrator delivered the Class Notice and Claim Form to Class Members via first-class mail on February 8, 2019. (Simpluris Decl., ¶ 7.) The Class Notice includes all of the information required by Federal Rule of Civil Procedure 23. Specifically, the proposed Notice includes a summary of the action, the definition of the Class, and Plaintiffs' claims; the settlement terms, explains that they may object to the settlement either in writing or by appearing at the Final Approval Hearing either in person or through an attorney, explains that Class Members may exclude themselves from the settlement; and specifies the time requirements and manner of requesting exclusion, as well as the binding effect of a class-wide judgment. (Compare Simpluris Decl., Ex. A with Fed. R. Civ. Proc. 23(c)(2)(B) (specifying the elements of class notice).) The Notice further provides the time and place of the Final Approval Hearing; and prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries. (Simpluris Decl., Ex. A.) In addition, the Class Notice describes how the Individual Settlement Payments are calculated. (Id.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-
ACTION SETTLEMENT

Class Members have until April 9, 2019, sixty days from the date of the initial
mailing, to submit exclusion requests to the Settlement Administrator.  (Id.)  Class
Members were also permitted to submit objections within the sixty-day period after the
date of the initial mailing.  (Id.)  These notice procedures constitute the "best notice . . .
practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  See e.g.
Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 452 (E.D. Cal. 2013) (explaining
that "the 'best notice . . . practicable under the circumstances'" does not mean that "actual
notice" must be provided to each class member; that "[n]otice by mail is sufficient to
provide due process to known affected parties, so long as the notice is 'reasonably
calculated . . . to apprise interested parties of the pendency of the action"; and that "notice
by mail to [c]lass [m]embers' last known addresses" satisfies this standard) (quoting Fed.
R. Civ. Proc. 23(c)(2)(B); Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,
314 (1950)); Moshogiannis v. Sec. Consultants Group, Inc., 2012 U.S. Dist. LEXIS
16287, at *20 (N.D. Cal. filed Feb. 8, 2012) (approving a forty-five-day claims window).

### 5.    Release Provisions and Opting Out

If the Court grants final approval of the Settlement, in exchange for the
consideration described above the claims released by the class include:

> [A]ny and all claims, causes of action, damages, penalties, interest, fines,
> debts, liens, liabilities, demands, obligations, attorneys' fees, costs, and any
> other form of relief or remedy in law or equity, whether known or unknown,
> suspected or unsuspected that existed or came into existence between four
> years prior to the filing of the Complaint through the date of Preliminary
> Approval of the Settlement, inclusive, that were or could have been asserted
> based on the facts and claims pleaded in the Lawsuit, including but not
> limited to:
> > i.    All statutes/ordinances referenced in the Lawsuit and
> > corresponding provisions of the Fair Labor Standards Act,
> > California Industrial Welfare Commission Wage Orders, including
> > but not limited to (i) Labor Code Sections 201, 201.5, 202, 203,
> > 204, 226,  510, 515, 558, 1174, 1174.5, 1194, 1194.2, 1198, 1198.5
> > and 2968 et seq., as related to the above claims, (ii) all related
> > provisions allegedly relating to the claims in the Complaint for
> > continuing wages, failure to pay wages, minimum wages,

overtime, failure to provide allegedly required wage statements, civil penalties, liquidated damages, interest, costs and attorneys' fees; and/or

ii.    Any of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were or could have been asserted based on the facts and claims pleaded in the Lawsuit.

(Simpluris Decl., Ex. A.)  However, only those Settlement Class Members who opt-in and receive a share of the Settlement Amount shall be deemed to have released their Fair Labor Standards Act claim.  (Id.)  The scope of the release is proper.  (See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims settled in the class action.'") (quoting Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008)).)  Of course, were a Class Member to opt out from the Settlement, pursuant to the procedures outlined in the Class Notice, then he or she would not release any claims that he or she may have against Settling Defendants.

**B.     The Proposed Settlement Is Fair, Reasonable and Adequate And Warrants Preliminary Approval**

Rule 23 provides that "[t]he claims . . . of a certified class may be settled . . . only with the Court's approval."  Fed. R. Civ. Proc. 23(e).  In evaluating a proposed settlement, courts consider "(1) the strength of the Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; . . . and [7] the reaction of class members to the proposed settlement."  Bolton v. U.S. Nursing Corp., 2013 U.S. Dist. LEXIS 79928, at *12 (N.D. Cal. filed June 6, 2013) (citing Hanlon, 150 F.3d at 1026).  Also relevant is whether "'the settlement agreement was reached in arm's length negotiations,'" which "'create[s] a presumption that the

agreement is fair.'"  In re MRV Commc'ns., Inc. Derivative Litig., 2013 U.S. Dist. LEXIS 86295, at *9 (C.D. Cal. filed June 6, 2013) (quoting Linney v. Cellular Alaska P'ship, 1997 U.S. Dist. LEXIS 24300, at *5 (N.D. Cal. filed July 18, 1997)).  Here, each factor weighs in favor of approval.

### 1.     The Settlement Negotiations Were Conducted at Arm's Length

As noted above, the parties engaged in a mediation session before Mediator Michael D. Young, during which the parties each aggressively advocated for their respective positions.  Based upon the negotiations, and all known facts and circumstances, including the various risks and uncertainties related to lengthy legal actions, as well as further negotiations that continued after the mediation, the Parties accepted the mediator's proposal and agreed upon the material terms of the Settlement Agreement that the parties memorialized in a long-form agreement that was granted Preliminary Approval on January 22, 2019.  There can be no doubt that the Class Settlement is the result of arm's length negotiations and discussions.

### 2.     The Strength of Plaintiff's Case

Settling Defendants contend that a number of defenses they assert present serious threats to the claims of Plaintiff and the other Class Members.  These include risks to obtain and maintain FLSA and class certification, risk of loss on the merits at trial, and risk of an appeal.  (Harris Decl. ¶ 9.)

Finally, even if Plaintiffs are successful in their wage-statement and PAGA claims, authority from this Court holds that statutory damages and civil penalties predicated on the same underlying alleged wrong cannot be "stacked" on top of one another.  Smith v. Lux Retail N. Am., Inc., No. C 13-01579 WHA, 2013 WL 2932243, at *4 (N.D. Cal. June 13, 2013) (refusing to "pile one penalty on another for a single substantive wrong" and noting that "no actual holding in any judicial decision has ever blessed such stacking.").  Accordingly, at the conclusion of a successful trial, Plaintiffs may be limited in their recovery of statutory damages and civil penalties for derivative wage-statement violations.

In all, the significant risks of further litigation of this matter – just some of which are addressed above – evince that the proposed settlement – paying a substantial recovery to participating Class Members – is fair for the putative class.

### 3.    The Likely Duration of Further Litigation

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Without settlement, the duration of further litigation is very likely to be several more years such that this factor too supports final approval.

### 4.    The Risk of Maintaining Class-Wide Status Through Trial

Under Rule 23, a "[c]ourt may revisit a prior order granting certification of a class at any time." Nigh v. Humphreys Pharmacal, Inc., 2013 U.S. Dist. LEXIS 161215, at *18 (S.D. Cal. filed Oct. 23, 2013).  Here, it is clear that absent a settlement, Settling Defendants intend to vigorously oppose FLSA and/or class certification.  Accordingly, there is a significant risk that class-wide status may be denied to the Settlement Class, resulting in no recovery for the Settlement Class.   As such, this factor too supports final approval.  See Nigh, 2013 U.S. Dist. LEXIS 161215 at *19 (explaining that "the parties reached a settlement prior to . . . class certification"; that the defendants "have made it clear that absent settlement, they would 'vigorously contest class certification'"; and that "this factor [thus] weighs in favor of settlement").

### 5.    The Settlement Amount Offered

As detailed above, the $95,000 common fund will accomplish a payment currently estimated to be over $1,228 to each Class Member who submits a claim form.  This represents a recovery of several weeks of unpaid wages.  As the primary employer in charge of the day-to-day payroll and timekeeping has gone out of business, based on the records recovered by subpoena to a payroll company, this is a more than equitable resolution of this case.  Harris Decl. ¶ 5.; See Rodriguez v. West Publ'g Corp., 2007 U.S. Dist. LEXIS 74767, at *30 (C.D. Cal. filed Sept. 10, 2007) (noting that a "'settlement

15

amount representing 33% of the maximum possible recovery was well within a
reasonable range when compared with recovery percentages in other class action
settlements'") (quoting In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 257–58
(D. Del. 2002)), rev'd in part on other grounds, 563 F.3d 948 (9th Cir. 2009).
Consequently, this factor weighs as well in favor of approval.

### 6.    The Extent of Discovery and the Stage of the Proceedings

Prior to mediation, Plaintiff and Settling Defendants exchanged substantial
disclosures and Defendant Marriott responded to extensive discovery requests in this
case.  The extensive analysis by Plaintiff's counsel, coupled with the additional data
subpoenaed from LSG's payroll company, allowed them "to make an informed decision
about settlement." Williams, 2013 U.S. Dist. LEXIS 121307, at *14.  This "weigh[s]
heavily in favor of granting . . . approval." Id. at *15.

### 7.    The Experience and Views of Counsel

Class Counsel have substantial experience in prosecuting class actions, including
wage-and-hour matters, and they are of the opinion that the Settlement Agreement
represent a good compromise for the Class, given the inherent risks, hazards, and
expenses of carrying the action through trial.  (Harris Decl. ¶¶ 11–15.)  Additionally,
Settling Defendants have maintained that they were not the employer under the joint
employer or California Labor Code § 2810.3 client employer theories of liability.  Based
on the data produced pursuant to formal and informal discovery, as well as Counsel for
Plaintiff's own independent investigation and evaluation, and Mediator Young's efforts,
Plaintiff's Counsel believe that the settlement with Settling Defendants for the
consideration and on the terms set forth in the Settlement Agreement are fair, reasonable,
and adequate and is in the best interests of the Settlement Class Members in light of all
known facts and circumstances, including the risks of significant delay and uncertainty
associated with litigation, various complete defenses asserted by Settling Defendants, and
numerous potential appellate issues.  As the Central District has explained, this weighs
strongly in favor of approving the settlement.  See Rodriguez, 2007 U.S. Dist. LEXIS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-
ACTION SETTLEMENT

74767, at *31 ("[T]he trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### 8. The Reaction of the Class Members to the Proposed Settlement

The reaction of the Settlement Classes thus far supports approval of the Settlement. Significantly, after dissemination of the Notice to the members of the Settlement Class, which provided each class member with the terms of the settlement, including the estimated payment amount to the employees, there have been no opt outs and no objections to the settlement.  (Simpluris Decl., ¶¶ 10–11.)   The absence of any objector strongly supports the fairness, reasonableness and adequacy of the Settlement.  See In re Austrian & German Bank Holocaust Litigation, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d. Cir. 1990) (29 objections out of 281 member class "strongly favors settlement"); Laskey v. Int.'l Union, 638 F.2d 954 (6th Cir. 1981) (That only 7 out of 109 class members objected to the proposed settlement should be considered when determining fairness of settlement.)  The overwhelming approval of the class is evident.

## IV. CONCLUSION

For the aforementioned reasons, the Settlement Agreement fulfills the Rule 23 requirements that the proposed resolution is fair, reasonable and adequate.  Consequently, Plaintiff respectfully request that this Court issue an Order granting final approval of the class settlement in this action.

DATED: March 20, 2019                    Respectfully Submitted,

                                          HARRIS & RUBLE


                                          By:  _/s/ Alan Harris_____
                                             Alan Harris
                                             Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS-ACTION SETTLEMENT